UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FAAZA FAKRI DAWD,

    Plaintiff,

v.                                                       Case No. 1:20-cv-869
                                                        Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

       Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied her claim for supplemental security income (SSI).

       On October 21, 2014, plaintiff filed an application for SSI alleging a disability onset date of January 1, 2006. PageID.398. Plaintiff identified her disabling conditions as depression, cancer of right breast with repeated surgeries, and blood clots behind the knee. PageID.428. Plaintiff's preferred language is Arabic. She does not speak, read, or understand English. PageID.427. Plaintiff completed the 7th grade and has no work history. PageID.429. Administrative Law Judge (ALJ) Colleen M. Mamelka held a hearing and issued an unfavorable decision on January 18, 2018. PageID.178-187. The Appeals Council remanded for additional factfinding and new hearing. PageID.196-199.

       According to ALJ Mamelka,

> In its remand order, AC directed me to get an interpreter as needed; get other evidence regarding the impairments; evaluate the alleged symptoms; in accord with

1

>the special technique, evaluate the mental impairments; further consider the residual functional capacity; and expand the record with vocational expert evidence for past relevant work and the occupational base, if needed.

PageID.58. ALJ Mamelka held a second hearing on July 16, 2019, and entered a decision denying benefits on September 30, 2019. PageID.58-70, 79-119. The second decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record.

2

*Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988).  "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion."  *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits.  A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability.  First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four.  *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir.

2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.   ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful activity since her application date of October 21, 2014. PageID.60. At the second step, the ALJ found that plaintiff had severe impairments of: post-traumatic stress disorder (PTSD); depression; anxiety; insomnia; somatic symptoms disorder with right arm contraction; bilateral breast cancer status/post lumpectomy and mastectomy with reconstruction; left knee parameniscal cyst with partial tear status/post ACL reconstruction; osteoarthritis bilateral knees; and spondylosis. *Id.* At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.*

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except standing is limited to four hours in an 8-hour workday. She can occasionally climb ramps/stairs, stoop, kneel, crouch, crawl, reach/handle with

>  RUE [right upper extremity], and push/pull with her lower extremities. She is unable to climb ladders/ropes/scaffolds or be exposed to unprotected heights or dangerous moving machinery. Work is limited to simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only occasional simple work-related decisions with routine work place changes. Work is further limited to no direct interaction with the general public and to jobs that do not require communication in English.

PageID.62-63.  The ALJ also found that plaintiff is not able to communicate in English, is considered in the same way as an individual who is illiterate in English, and has no past relevant work.  PageID.68.[1]

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level.  PageID.69. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light work in the national economy such as small parts assembler (17,000 jobs), inspector/packager (86,000 jobs), and price marker (300,000 jobs).  *Id*.  Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since October 21, 2014 (the date the application was filed) through September 30, 2019 (the date of the decision).  PageID.69-70.

> **III.   DISCUSSION**

Plaintiff has raised six issues on appeal.

> **A. Did the ALJ err by failing to support her decision by substantial evidence?**

Plaintiff appears to contend that the findings addressed in §§ III.B, C, and D are not supported by substantial evidence.  *See* discussion, *infra*.

---

[1] "Illiteracy means the inability to read or write. We consider someone illiterate if the person cannot read or write a simple message such as instructions or inventory lists even though the person can sign his or her name. Generally, an illiterate person has had little or no formal schooling."  20 C.F.R. § 404.1564(b)(1).  The term "inability to communicate in English" is defined as follows, "Because English is the dominant language of the country, it may be difficult for someone who doesn't speak and understand English to do a job, regardless of the amount of education the person may have in another language. Therefore, we consider a person's ability to communicate in English when we evaluate what work, if any, he or she can do. It generally doesn't matter what other language a person may be fluent in."  20 C.F.R. § 416.964(b)(5).

**B. Did the ALJ commit reversible error by failing to properly support her assessments of listing impairments 12.04, 12.06, 12.07 and 12.15 when the evidence shows plaintiff meets these listings?**

Plaintiff contends that she meets the requirements of Listings 12.04 (depression, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.07 (somatic symptom and related disorders), and 12.15 (trauma- and stressor-related disorders). Listings 12.04, 12.06, 12.07 and 12.15 each require that the claimant satisfy the "paragraph A" requirement. In addition, the claimant must meet either the "paragraph B" requirement or the "paragraph C" requirement (the latter two requirements are identical for the four listings).

The ALJ did not address the "paragraph A" criteria for these four listings. For purposes of this opinion, the Court construes this paragraph uncontested. The crux of the ALJ's decision is that plaintiff's mental impairments were not sufficiently severe to meet the requirements of either paragraph B or paragraph C.

Paragraph B requires:

> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
>
>> 1. Understand, remember, or apply information (see 12.00E1).
>>
>> 2. Interact with others (see 12.00E2).
>>
>> 3. Concentrate, persist, or maintain pace (see 12.00E3).
>>
>> 4. Adapt or manage oneself (see 12.00E4).

The ALJ addressed the paragraph B requirements as follows:

> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.07, and 12.15. In making this finding, I considered if the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in one extreme limitation or two marked limitations in a broad area of functioning. An extreme limitation is the inability to function independently,

6

>    appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.
>
>    In understanding, remembering or applying information, the claimant has a moderate limitation. She alleges she needs reminders for self-care and medicine as well as has trouble following instructions but drives, shops, and does self-care (3E and 5E). The record repeatedly showed she had normal memory. She also was noted to have normal thought content and improvement with medicine (15F, 21F, 27F, and 29F). Therefore, the claimant has only moderate limitation in understanding, remembering, or applying information.
>
>    In interacting with others, the claimant has a moderate limitation. She reports she did not leave home alone and only visited with family but goes to stores and gets along with others, including authority (3E and 5E). The record repeatedly showed she was oriented with fair insight and judgment. She also was noted to have traveled out of the country (15F and 27F). Therefore, the claimant has no more than moderate limitation in interacting with others.
>
>    With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. She alleges crying episodes and trouble concentrating but drives and goes to stores (3E and 5E). The record repeated showed she had fair concentration and normal motor activity. She was also noted to have improvement with medication (15F, 21F, 27F, 29F, and 30F). I find the claimant has just moderate limitation in concentration, persistence, or maintaining pace.
>
>    As for adapting or managing oneself, the claimant has experienced a moderate limitation. She reports she just sits in her room and had trouble sleeping but does self-care, goes to stores, and sometimes does chores (3E and 5E). The record showed she got her driver's license with no restrictions and lost weight on a diet. She was also noted to have improved with medicine (15F, 29F, and 30F). Therefore, the claimant has moderate limitation in adapting or managing oneself. Because the claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria are not satisfied.

PageID.61-62.

Plaintiff contends that substantial evidence does not support the ALJ's decision with respect to the paragraph B criteria, relying on the opinions of consulting examiner, Jonathan Shy, Ph.D. Plaintiff points out that Dr. Shy conducted a consultative examination in accordance with the Appeals Council's order of remand. Plaintiff's Brief (ECF No. 19, PageID.1615). In a "medical statement of ability to do work-related activities (mental)" dated August 22, 2019 (Exh.

7

30F), Dr. Shy found that plaintiff had some moderate, marked and extreme restrictions in her ability to understand, remember, and carry out instructions. The marked or extreme limitations were in the ability to understand and carry out complex instructions, and the ability to make judgments on complex work-related decisions. PageID.1553. With respect to interacting appropriately with supervisors, co-workers and the public, Dr. Shy found that plaintiff had marked restrictions in her ability to interact with the public and co-workers, and extreme restrictions in interacting appropriately with supervisors and responding appropriately to usual work situations and to changes in a routine work setting. PageID.1554. Dr. Shy found that plaintiff did not have impairments in the ability to concentrate, persist or maintain pace, or the ability to adapt or manage oneself. *Id*. Based on this record, Dr. Shy's opinion could support the paragraph B criteria with respect to (1) the ability to understand, remember, or apply information, and (2) the ability to interact with others.

> The ALJ addressed Dr Shy's opinion stating,

>> Consultative psychologist, J. Shy, PhD, found, in August 2019, the claimant appeared fragile, tired, and distressed with depression, anxiety, and flat affect, but she had normal motor activity and mental activity/trend (30F). . .

>> Consultative psychologist, J. Shy, PhD, was of the opinion, in August 2019, the claimant had marked and extreme limitations (30F). Although this opinion was from an examining source, I give it little weight because it is not supported by the record of normal behavior, attitude, orientation, thought process, and memory as well as the claimant's report that she felt better (15F). Dr. Shy's opinion is inconsistent with treatment records that document improvement with prescribed treatment, no hospitalizations, and conservative management only.

PageID.65, 68. The ALJ further stated,

> As previously noted, the ability travel internationally (navigating airport terminals, immigration, crowds), obtain a driver's license without restrictions, adhere to a diet, yet not prescribed treatment, are seemingly inconsistent with alleged debilitating mental health symptoms.

PageID.68.

Under the regulations applicable to plaintiff's claim[2], an ALJ's failure "to discuss thoroughly the opinion of a consultative examiner does not warrant reversal." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 468 (6th Cir. 2004). While the ALJ is required to give "good reasons" for the weight assigned a treating source's opinion, this articulation requirement does not apply when an ALJ rejects the report of a non-treating medical source. *See Smith v. Commissioner of Social Security*, 482 F.3d 873, 876 (6th Cir.2007). Nevertheless, "the ALJ's decision still must say enough to allow the appellate court to trace the path of his reasoning." *Stacey v. Commissioner of Social Security*, 451 Fed. Appx. 517, 519 (6th Cir. 2011) (internal quotation marks omitted).

The Appeals Council vacated the ALJ's earlier decision and directed the ALJ to further evaluate plaintiff's mental impairment on remand. PageID.198. Dr. Shy's examination was part of this evaluation, being performed on August 22, 2019. As discussed, the doctor appeared to conclude that plaintiff met the paragraph B criteria of Listings 12.04, 1.06, 12.07 and 12.15. The ALJ rejected this opinion citing one exhibit, which indicated that sometime in July 2017, two years before Dr. Shy examined her, plaintiff reported that "she felt better." *See* Exh. 15F (PageID.1141-1154). Given this record, the Court cannot trace the path of the ALJ's reasoning with respect to Dr. Shy. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C § 405g. On remand, the Commissioner should re-evaluate Dr. Shy's opinion and whether plaintiff meets the requirements of Listings 12.04, 12.06, 12.07 and 12.15.

> **C. Did the ALJ commit reversible error by failing to evaluate the type, dosage, and side effects of plaintiff's medications in her decision and the adopted RFC?**
>
> **D. Was the ALJ's adopted RFC that failed to include any missed days of work nor any time off task due to plaintiff's PTSD supported by substantial evidence?**

---

[2] *See* 20 C.F.R. § 416.927.

First, plaintiff contends that the ALJ's RFC failed to address the type, dosage, and side effects of her medication. RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ determines the RFC "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 416.920(e).

> In evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which those symptoms limit a claimant's capacity for work, the Commissioner considers various factors, including "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(iv). Allegations of a medication's side effects must be supported by objective medical evidence. *See Essary v. Commissioner of Social Security*, 114 Fed. Appx. 662, 665-66 (6th Cir. 2004) (where plaintiff testified that she suffered from dizziness and drowsiness as a result of her medications, the ALJ did not err in finding that she suffered no side effects where her medical records contain no such reported side effects to her physicians).

*Hensley v. Commissioner of Social Security*, No. 1:14-cv-1227, 2016 WL 1156591 at *4 (W.D. Mich. March 24, 2016). *See, e.g., Farhat v. Secretary of Health and Human Services*, No. 91-1925, 1992 WL 174540 at * 3 (6th Cir. July 24, 1992) ("[The claimant's] allegations of the medication's side-effects must be supported by objective medical evidence").

Here, plaintiff did not cite objective medical evidence that she suffered from limitations due to medication side effects. Rather, plaintiff refers in conclusory terms to "clear evidence and testimony that her Medication side effects make the Plaintiff drowsy, suffer stomach pain, and have memory problems." Plaintiff's Brief at PageID.1623-1624. Accordingly, this claim is denied.

Next, plaintiff contends that the ALJ's RFC failed to address evidence that she would miss days of work or experience time off task due to PTSD. This argument is based on plaintiff's testimony that she missed appointments with medical treaters because therapy causes her to re-live the traumatic experiences of death and destruction in Iraq. Plaintiff's Brief at PageID.1624-1625. Plaintiff's testimony regarding PTSD is limited to her interactions with doctors or therapists.[3] Plaintiff presents no evidence that she would miss work or be off task in a work setting. On the contrary, the ALJ noted that plaintiff's failure to keep medical appointments was part of a pattern of non-compliance with medical treatment.[4] Accordingly, this claim is denied.

> **E. Did the ALJ commit reversible error by failing to properly follow the Commissioner's own rules and regulations?**
>
> **F. Did the ALJ commit reversible error by failing to follow the "treating-source" rule and Sixth Circuit precedent?**

Finally, plaintiff contends that the ALJ failed to give good reasons for the weight assigned to the opinions of her treating psychiatrist, Zulfiqar Ahmed, M.D. Because plaintiff filed her application before March 27, 2017, the "treating physician rule" applies to the ALJ's decision. *See* 20 C.F.R. § 416.927. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). Under the regulations, a treating source's opinion on the

---

[3] Plaintiff testified that she does not want to go to the doctors anymore because "when I go out to the doctors, he's asking me like too many questions like what happened." PageID.95.

[4] "From July 2017 until May 2019, the claimant's mental health treatment remained conservative and records noted improvement with medicine. In May 2018, her provider noted she missed an appointment and ran out of medicine. Again in July 2018, she was noted to have missed an appointment and ran out of medication. The record showed other non-compliance, which suggests the symptoms were not especially troublesome (27F, 29F)." PageID.64.

nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Ahmed's August 31, 2017 opinion (Exh. 17F) consists of three sentences,

> This letter is to certify that Faaza Dawd has been a patient of Dr. Zulfiqar Ahmed since 7/5/17. She suffers from PTSD and major depressive disorder. Due to the severity of these disorders, she is not able to work.

PageID1168. It appears that Dr. Ahmed provided a second opinion, when he co-signed a form of hypothetical questions signed by a nurse practitioner (Exh. 19F) (PageID.1177-1179). This appears to be the same document as signed by the nurse practitioner submitted as another exhibit (Exh. 18F) (PageID.1172-1174).

The ALJ addressed Dr. Ahmed's treatment and opinions as follows:

> At a hospital visit in May 2017, the claimant was found oriented with normal mood, affect, behavior, and judgment with intact thoughts (24F). In July 2017, her psychiatrist, Z. Ahmed, MD, noted increased depression as a result of the claimant's travel to Iraq where she experienced the loss of her father and step-brother. Dr. Ahmed found she had restricted affect for her report of hearing voices. However, Dr. Ahmed also found she was cooperative, alert, and oriented with normal speech and memory with note she reported doing well with medicine (15F). In progress visits, Dr. Ahmed found the claimant had irritable mood with flat affect but intact memory and fair concentration, insight, and judgment (21F). The claimant reported increased auditory hallucinations and paranoia, in May 2018. Dr. Ahmed found she had irritable mood with hallucinations and paranoia with flat affect noting the claimant had missed her appointment and ran out of medication.

However, later that month, Dr. Ahmed found the claimant oriented with no hallucinations or psychomotor agitation and normal speech and memory with fair concentration, insight, and judgment. The claimant's diagnoses included moderate depression and PTSD. In July 2018, Dr. Ahmed again noted the claimant missed an appointment and ran out of medication. In October 2018, Dr. Ahmed changed the claimant's moderate depression diagnosis to recurrent, severe without psychotic features (27F). . . .

The claimant's psychiatrist, Z. Ahmed, MD, was of the opinion, in August 2017, the claimant could not work (17F). I give this opinion little weight because it appeared to be made after an initial evaluation finding depression and anxiety the prior month. Although a treatment relationship was established, this assessor's first findings included normal appearance/behavior/attitude, orientation, thought process, and memory, and fair concentration (15F). In a progress visit, this assessor noted the claimant felt better but depressed after the death of the claimant's father and stepbrother while visiting family in Iraq. At that time, the claimant reported hearing voices, however; treatment remained conservative. Dr. Ahmed's opinion was given after two examinations and appear to be based on the claimant's subjective complaints. From July 2017 through May 2019, mental health treatment remained conservative noting improvement with medication. More specifically, in September, October, and December 2017, and January, February, and March 2018, Dr. Ahmed documented irritable mood with flat affect with intact memory and fair concentration/insight/judgment (21F). The claimant reported increased auditory hallucinations as well as findings of paranoia. On May 2, 2018, Dr. Ahmed documented irritable mood with hallucinations and paranoia with flat affect noting the claimant had missed her appointment and ran out of medication (27F). On May 30, 2018, Dr. Ahmed's MSE found oriented x4, no psychomotor agitation, irritable/depressed mood; no hallucinations, normal speech, intact memory with fair concentration, insight, and judgment. Paranoia was also noted with the diagnoses of moderate depression and PTSD (27F). Again, in July 2018, Dr. Ahmed noted the claimant missed her June appointment and ran out of medication. At that time, she requested a supportive letter to assist her young sister in applying for a visa to visit the claimant (27F). Similar MSEs and diagnoses were given in August 2018. In October 2018, Dr. Ahmed changed the claimant's moderate depression diagnosis to recurrent, severe w/o psychotic features (27F). The record further documents non-compliance (missed appointments, running out of medication) (27F, 29F). There were no psychiatric hospitalizations. Ultimately, Dr. Ahmed's opinion is given little weight based on his treatment records which generally are unremarkable when adherence to prescribed treatment. . . .

The claimant's nurse practitioner, C. Harris AGPCNP, had the opinion, in September 2017, the claimant could not understand and carry out instructions or be around strangers. It was also opined the claimant needed unscheduled breaks, would miss more than four days of work a month, and had severely impaired ability to maintain gainful employment (19F). I noted this opinion was from an examining source and made after just an initial visit. I give this opinion little weight because

13

> it appears to be based on subjective complaints from the claimant rather than a history of treatment. It is noted that Dr. Ahmed cosigned this opinion, but as noted above, treatment records generally reflect medication management only with no psychiatric hospitalizations with improvement while on prescribed treatment.

PageID.64-65, 67-68.

The gist of the ALJ's evaluation of Dr. Ahmed's opinion is found in her conclusion that "[u]ltimately, Dr. Ahmed's opinion is given little weight based on his treatment records which generally are unremarkable when adherence to prescribed treatment." PageID.67. An impairment that can be remedied by treatment will not serve as a basis for a finding of disability. *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967). Based on this record, the ALJ gave good reasons for the weight assigned to Dr. Ahmed's opinions. Accordingly, plaintiff's claim is denied.

### IV. CONCLUSION

Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the opinions of Dr. Shy with respect to whether plaintiff meets the requirements of Listings 12.04, 12.06, 12.07 and 12.15. A judgment consistent with this opinion will be issued forthwith.


Dated:  March 15, 2022                    /s/ Ray Kent
                                          United States Magistrate Judge